UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MATTHEW J. SHERVEN, :<br>:<br>Plaintiff, :<br>v. :<br>:<br>NATIONAL RECONNAISSANCE :<br>OFFICE, :<br>:<br>Defendant. : | Civil Action No. 22-cv-03164 (APM) |

**MEMORANDUM OPINION**

This case brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, is before the court on cross-motions for summary judgment. Def.'s Mot. for Summ. J., ECF No. 20 [hereinafter Def.'s Mot.]; Pl.'s Opp'n and Cross-Motion for Summ. J., ECF Nos. 22, 24 [hereinafter Pl.'s Opp'n]. For the reasons explained below, Defendant's motion is granted and Plaintiff's cross-motion is denied.

**I. BACKGROUND**

On August 24, 2022, Plaintiff Matthew J. Sherven submitted a FOIA Request to Defendant National Reconnaissance Office ("NRO") by email, seeking release of "all information" that the NRO "has on [him]" and "the names of all spy satellites that have been used on[] [him]." *See* Decl. of Carol Krumm, ECF No. 20-2 [hereinafter Krumm Decl.], ¶¶ 1, 3 & Ex. A, ECF No. 20-2, at 7–8 [hereinafter FOIA Request].[1] In the request, Plaintiff included his name, current address, a previous address, two phone numbers, and his date of birth. *See* Krumm Decl. ¶ 3; FOIA Request. The last sentence of his Request states, "I certify under penalty of perjury that

---

[1] All citations to the exhibits accompanying the Krumm Declaration are to the CM/ECF page numbers.

I am the person named in this email and that the foregoing is true and correct," but it is unsigned. FOIA Request.

The NRO's FOIA Information Review and Release Group ("IRRG") fielded Plaintiff's FOIA request. On September 1, 2022, it issued an initial response letter, acknowledging receipt and advising Plaintiff that, pursuant to specific applicable Department of Defense ("DOD") regulations, the DOD and its components—including the NRO—must process such FOIA Requests pursuant to the regulations of both the FOIA and the Privacy Act, providing requesters with the benefit of the breadth of both statutes. *See* Krumm Decl. ¶¶ 4–6 (citing 32 C.F.R. §§ 286.3(c), 310.1, 310.3; 28 U.S.C. § 1746) & Exs. B, C1, C2, ECF No. 20-2, at 9–19. And, because Plaintiff was seeking records about himself, the IRRG notified him that, pursuant to these regulations, it required additional specific statutorily required information to confirm Plaintiff's identity, submitted by way of a signed statement that is either notarized, or alternatively, submitted under the penalty of perjury. *See id.*, Ex. B. More specifically, the IRRG required Plaintiff to provide his "full name, current address and email address, . . . date of birth, place of birth, and telephone number." *See id.* To date, Plaintiff has not provided this additional required information. *See* Krumm Decl. ¶ 6. Finally, the IRRG advised Plaintiff that the NRO does not maintain records responsive to the portion of his Request seeking "the names of all spy satellites that have been used" on him. *See id.*

On October 12, 2022, Plaintiff filed this lawsuit, demanding release of the information sought in his FOIA Request.[2] *See* Compl. ¶¶ 3–4. In response to the lawsuit, and despite Plaintiff's

---

[2] Plaintiff also makes passing reference to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), *see* Compl. ¶ 2, but *Bivens* provides only for the recovery of money damages from a defendant sued in an individual capacity, *see Davis v. Passman*, 442 U.S. 228, 245 (1979); *Simpkins v. District of Columbia Gov't*, 108 F.3d 366, 369 (D.C. Cir. 1997), and Plaintiff pleads no such claim in this matter. And, in any event, a demand for money damages for an alleged

2

lack of compliance with its regulations, *see* Krumm Decl. ¶¶ 6–7, the NRO nonetheless conducted several searches for records responsive to Plaintiff's FOIA Request, *see id.* ¶¶ 7–8, 11. It found no responsive records. *See id.*

## II. STANDARD OF REVIEW

In a FOIA case, a district court reviews the agency's decisions *de novo* and "the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B); *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). "[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Office of U.S. Trade Rep.*, 641 F. 3d 521, 527 (D.C. Cir. 2011). Under Federal Rule of Civil Procedure 56, "[a] party is entitled to summary judgment only if there is no genuine issue of material fact and judgment in the movant's favor is proper as a matter of law." *Soundboard Ass'n v. Fed. Trade Comm'n*, 888 F.3d 1261, 1267 (D.C. Cir. 2018) (quoting *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 452 F.3d 798, 805, (D.C. Cir. 2006)); *see also* Fed. R. Civ. P. 56(a). "[S]ummary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Aguiar v. Drug Enf't Admin.*, 865 F.3d 730, 734–35 (D.C. Cir. 2017) (quoting *Jud. Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013)); *see also Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir.

---

constitutional violation is unavailable under FOIA, because "the sole remedy available to a requester [under the FOIA] is injunctive relief[.]" *see Roman v. Nat'l Reconnaissance Office*, 952 F. Supp. 2d 159, 163–64 (D.D.C. 2013); *Pickering-George v. Registration Unit, DEA/DOJ*, 553 F. Supp. 2d 3, 4 (D.D.C. 2008) ("Because the FOIA's 'comprehensive scheme' provides the exclusive remedy of an injunction for claims arising from the withholding of agency records, . . . Plaintiff may not recover monetary damages and he states no claim upon which relief may be granted for the separately alleged constitutional violations.") (quoting *Johnson v. Executive Office for U.S. Attorneys*, 310 F.3d 771, 777 (D.C. Cir. 2002)).

3

2001) ("[A]n agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly exempt from the Act's inspection requirements.'") (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978)).

"[T]o satisfy FOIA's aims of providing more transparency into the workings of the government," an agency must demonstrate that an adequate search for records responsive to a FOIA request was made. *Montgomery v. IRS*, 40 F.4th 702, 714 (D.C. Cir. 2022). This demonstration "entails a 'show[ing] that [the agency] made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.'" *Id*. (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). The D.C. Circuit has explained that "[w]hile the agency need not search every record system, it also may not limit its search to only one record system if there are others that are likely to turn up the information requested." *Id*. (internal quotation and citation omitted). Moreover, "the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003).

In short, summary judgment is inappropriate only "if a review of the record raises substantial doubt as to the search's adequacy, particularly in view of well defined requests and positive indications of overlooked materials." *Shapiro v. United States DOJ*, 40 F.4th 609, 613 (D.C. Cir. 2022) (quoting *Reporters Committee for Freedom of the Press v. FBI*, 877 F.3d 399, 402 (D.C. Cir. 2017) (cleaned up)).

In assessing an agency's fulfillment of its FOIA obligations, an agency's declarations are accorded "'a presumption of good faith, which cannot be rebutted by purely speculative claims

4

about the existence and discoverability of other documents.'" *Id.* (quoting *Bartko v. Dep't of Justice*, 898 F.3d 51, 74 (D.C. Cir. 2018) (some quotation marks omitted); *SafeCard Services, Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)).

## III.  DISCUSSION

Defendant bears the initial burden of showing that its searches were adequate. *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984). The adequacy of an agency's search is measured by a standard of reasonableness under the circumstances. *Truitt v. U.S. Dep't of State*, 897 F. 2d 540, 542 (D.C. Cir. 1990). When an agency's declarations explain in reasonable detail the scope and method of the search, *see Morley v. CIA*, 508 F.3d 1108, 1116 (D.C. Cir. 2007) (citations omitted), "[i]n the absence of contrary evidence, such . . . declarations are sufficient to demonstrate an agency's compliance[,]" *North v. U.S. Dep't of Justice*, 774 F. Supp. 2d 217, 222 (D.D.C. 2011) (citing *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982) (per curiam)). Here, given the evidence presented, the court is satisfied that the NRO's searches were adequate and reasonable under the circumstances.

The NRO has submitted two Declarations from Carol Krumm, the IRRG Chief, who bears a wealth of tenure, experience, and personal knowledge regarding (1) the types of documents that the NRO maintains, (2) the NRO's FOIA policies and procedures, and (3) Plaintiff's FOIA Request, as she was responsible for processing it. *See* Krumm Decl. ¶¶ 1–2, 13; Second Declaration of Carol Krumm ("Krumm Decl. II"), ECF No. 23-1, ¶¶ 1–2, 4. Krumm attests that "the NRO's mission does not include collecting and maintaining information on individuals except through [the] NRO's Office of Security and Counterintelligence (OS&CI)." Krumm Decl. ¶ 7. And although the Office of Security and Counterintelligence ("OSCI") maintains some types of information relating to certain individuals, it does not maintain that information "for security and

5

counterintelligence purposes[,]" *see id*. ¶ 8, as suggested by Plaintiff, *see* FOIA Request; Compl. ¶ 3.

On June 7, 2023, and June 8, 2023, the OSCI searched within "Scattered Castles," "the United States Intelligence Community's personnel security repository for information on personnel clearances, approved access, and visits of individuals with security clearances." Krumm Decl. ¶ 8. It searched Scattered Castles using Plaintiff's first and last name, as well as his date of birth, which produced no results. *Id*. Krumm then reports that "another search of this database was conducted with [Plaintiff's] first name and last name, and without using his date of birth, and this search also produced no results. (This database is not searchable by date of birth only.)." *Id.* ¶ 9. Finally, it searched Scattered Castles "using only the last name, Sherven." *Id.* ¶ 10. While this broader search, understandably, produced some results, the records retrieved involved other individuals with the surname Sherven, not Plaintiff, and therefore, those results were deemed unresponsive. *See id*.

The OSCI then "also searched an internal NRO personnel security clearance database, which is the personnel security repository for information on personnel clearances, approved access, and visits of NRO personnel and visitors." *Id.* ¶ 11. Krumm states that this "database is searchable by name but not by date of birth, however, if multiple individuals with the same name are found, date of birth can be used as a discriminator." *Id*. The OSCI "searched using [Plaintiff's] first name, Matthew, and last name, Sherven, and no results were found." *Id*. It also "searched using only the last name, Sherven, and no results were found." *Id.*

Krumm next explains that the NRO's

> primary mission is to develop, acquire, launch, and operate satellites. Information collected by these satellites, aside from engineering data for flight and diagnostic information, is generally on behalf of other Defense Department and civilian agencies. For example, the National

> Geospatial-Intelligence Agency ("NGA") may task NRO satellites to collect imagery, such as of a natural disaster area or an area of conflict. In addition, these taskings from NGA are generally for geographically-defined areas and would not be identified as seeking imagery of an individual, such as the Plaintiff. Further, information collected pursuant to such tasking goes to the requesting agency, and may be maintained by that agency, but not by NRO.

*Id*. Furthermore, the agency's mission does not include "satellite tracking and spying on individual persons, as claimed by Plaintiff." Krumm Decl. II ¶ 3. Given the NRO's purpose, Krumm attests that it is unsurprising that no records regarding Plaintiff were retrieved, but the agency nonetheless conducted searches "reasonably calculated to uncover all potentially responsive records" in all of the "locations likely to contain relevant documents[.]" *See* Krumm Decl. ¶ 13; *see also* Krumm Decl. II ¶ 4.

The court finds that the NRO's declarations set forth in reasonable detail, and in good faith, the type of information the agency retains, the manner in which that information is organized, the databases that were searched in responding to Plaintiff's FOIA Request, the scope of the searches, and the specific search terms used. *See* Krumm Decl. ¶¶ 7–14; Krumm Decl. II ¶¶ 3–4. Krumm specifically describes why the certain databases and search terms were used, avers that the searches were reasonable, and explains why no responsive records were found. *See id*. Consequently, the court finds that the NRO has shown "in reasonable detail the scope and method of the search conducted by the agency [sufficient] to demonstrate compliance with the obligations imposed by the FOIA[,]" *Perry*, 684 F.2d at 127, and that those searches were reasonable under existing circumstances, *see White v. Dep't of Justice*, 840 F. Supp. 2d 83, 89 (D.D.C. 2012).

Having "made a *prima facie* showing of adequacy, the burden [then] shifts to [P]laintiff to provide . . . evidence sufficient to raise 'substantial doubt' concerning the adequacy of the agency's search." *Schoenman v. FBI*, 764 F. Supp. 2d 40, 46 (D.D.C. 2011) (quoting *Iturralde*, 315 F. 3d

at 314).  In response, Plaintiff first argues that the NRO only searched its "employment database" for "employment records." See Opp'n ¶ 1.  However, this contention is contrary to the record. Although the NRO searched two databases that mention the word "personnel," namely, Scattered Castles (the Intelligence Community's *personnel* security repository), and the NRO's internal *personnel* security clearance database, see Krumm Decl. ¶¶ 8–11, as discussed above, both of those databases include information on individuals beyond the NRO's own personnel, including individuals with approved access and visitors, see id. ¶¶ 8, 11.  The NRO has unequivocally stated that it does not possess information on any individuals outside of these categories.  See id. ¶¶ 12–13; Krumm Decl. II ¶¶ 3–4.

Second, Plaintiff broadly alleges that the NRO is "lying" and insists, without any supporting evidence, that it operates "spy satellites" to surveille unsuspecting individuals, himself included.  See Opp'n ¶ I; Compl. ¶ 3.  Once again, the NRO has clearly specified the types of individuals about whom it possesses information, and after several searches, it was determined that Plaintiff does not fall into any of those categories.  See Krumm Decl. ¶¶ 12–13; Krumm Decl. II ¶¶ 3–4.  "[I]t is well settled that conclusory allegations unsupported by factual data will not create a triable issue of fact." *Broaddrick v. Exec. Office of President*, 139 F. Supp. 2d 55, 65 (D.D.C. 2001) (internal quotation marks and citation omitted).  Here, Plaintiff's bare allegations that the NRO is being untruthful or has intentionally withheld information are insufficient to overcome the presumption of good faith accorded to the NRO's declarations.  See id.

To that same end, and as explained above, "whether a search is adequate is determined by methods, not results . . . [and an] agency's failure to locate . . . specific responsive document[s] will not, on its own, render an otherwise reasonable search inadequate." *Nance v. FBI*, 845 F. Supp. 2d 197, 201 (D.D.C. 2012) (citing *Brown v. FBI*, 675 F. Supp. 2d 122, 125–26 (D.D.C.

2009)). Simply put, Plaintiff's mere speculation that material should have been found does not undermine the NRO's otherwise reasonable search. *See Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986) (finding that the agency's search was "reasonable and adequate" and that the evidence submitted by the agency could not be overcome by the plaintiff's "claims of bad faith," rooted in his belief that the agency intentionally withheld documents "whose existence remains purely a matter of unsupported speculation"); *SafeCard Servs.*, 926 F.2d at 1201 ("Mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them.").

Accordingly, in light of the evidence submitted by the NRO, and the complete dearth of countervailing evidence from Plaintiff, the court finds that the NRO has fully met its obligations under the FOIA. *See Truitt*, 897 F.2d at 542.

## IV. CONCLUSION

For the foregoing reasons, the Court grants the NRO's Motion for Summary Judgment and enters judgment on its behalf, and it denies Plaintiff's Cross-Motion for Summary Judgment. A final, appealable Order accompanies this Memorandum Opinion.

Date: February 14, 2024

_____/s/_____
AMIT P. MEHTA
United States District Judge